# UNITED STATES DISTRICT COURT

for the

Eastern District of California

FILED
Nov 01, 2026
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

United States of America
v.

ANTOINE RASHAD POLITE

*Defendant(s)*

Case No. 2:26-mj-0165 CKD

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of September 23, 2026 through October 27, 2026 in the county of Sacramento in the Eastern District of California, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1701 | Obstruction of mail |
| 18 U.S.C. § 1703(b) | Delay or destruction of mail |

This criminal complaint is based on these facts:

(see attached Affidavit)

☒ Continued on the attached sheet.

/s/
*Complainant's signature*

Special Agent Emily Horn, USPS OIG
*Printed name and title*

Sworn to me and signed via telephone.

Date: 11/1/2026

*Judge's signature*

City and state: Sacramento, California

Carolyn K. Delaney, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Emily Horn, being first duly sworn, hereby depose and state as follows:

## I. Agent Background and Introduction

1. I, Emily Horn, a Special Agent (SA) with United States Postal Service, Office of Inspector General (USPS OIG), having personally participated in an investigation of the conduct of defendant ANTOINE RASHAD POLITE, and having spoken with other law enforcement officers and individuals, provide the following facts.

2. I am a Special Agent (SA) with the USPS OIG in West Sacramento, California, and have been since September 2021. Prior to my employment with the OIG, I was employed for approximately three years as a Postal Inspector with the Unites States Postal Inspection Service (USPIS). I completed training at the USPIS Academy in Potomac, Maryland. As a part of my official duties, it is my responsibility to investigate violations of federal and state law, including violations by USPS employees, destruction of government property, theft of United States (U.S.) Mail, possession of stolen U.S. Mail, mail and bank fraud, credit card fraud, identity theft, and counterfeit personal checks and identifications. As an OIG Special Agent and U.S. Postal Inspector, I have participated in numerous criminal investigations relating to such crimes.

3. Because this Complaint is submitted for the limited purpose of establishing probable cause, I have not included all facts known to me concerning this investigation. The contents of documents and the actions, statements, and conversations of individuals referenced below are provided in substance and in part, unless otherwise indicated. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

4. This affidavit is submitted for the purpose of establishing probable cause for the issuance of a criminal complaint and arrest warrant, charging that from on a date unknown, but starting on or about September 23, 2026, through October 27, 2026, in the Eastern District of California and elsewhere, ANTOINE RASHAD POLITE violated 18 U.S.C. § 1701 (Obstructing the Passage of Mail) and 18 U.S.C. § 1703(b) (Destruction or Delay of Mail).

5. 18 U.S.C. § 1701 provides: "Whoever knowingly and willfully obstructs or retards the passage of the mail, or any carrier or conveyance carrying the mail, shall be fined under this title or imprisoned not more than six months, or both."

6. 18 U.S.C. § 1703(b) provides: "Whoever, being a Postal Service officer or employee, improperly detains, delays, or destroys any newspaper, or permits any other person to detain, delay, or destroy the same, or opens, or permits any other person to open, any mail or package of newspapers not directed to the office where he is employed; or Whoever, without authority, opens, or destroys any mail or package of newspapers not directed to him, shall be fined under this title or imprisoned not more than one year, or both."

## II. Factual Background regarding the defendant and USPS operations

7. At all times relevant to this Complaint:

a. **ANTOINE RASHAD POLITE**. POLITE was employed by the United States Postal Service, Colonial Post Office in Sacramento, as a city carrier (also known as a mail carrier or letter carrier), having been first hired by the USPS in 2017. POLITE's responsibilities included the sorting, handling, organizing, and delivering mail in Sacramento.

b. **USPS**. The United States Postal Service (USPS) is an independent establishment of the executive branch of the United States government responsible for accepting, processing, transporting, and delivering mail throughout the United States.

c. USPS employs letter carriers who are responsible for delivering mail to addresses along assigned delivery routes. Letter carriers receive mail designated for their routes and are required to deliver that mail in accordance with USPS policies and procedures.

d. USPS recognizes certain mail as "Political Mail." Political Mail is "any material mailed for campaign purposes by a registered political candidate, campaign committee, or committee of a political party, as well as any material mailed by a political action committee or organization engaging in issues advocacy or voter mobilization."[1] Political Mail is distinct from Election Mail, which includes "any item mailed to or from authorized election officials that enables citizens to participate in the voting process, such as ballots, sample ballots, voter registration cards, absentee voting applications, and polling place notifications," and Ballot Mail, a subset of Election Mail, which are "mailpiece[s] sent to or from an authorized election official containing a live ballot that may be used to cast a vote in an election. Ballot Mail sent to a voter is often referred to as "outbound" Ballot Mail, whereas Ballot Mail sent from a voter is called 'return' or 'inbound' Ballot Mail."[2]

e. USPS maintains specific procedures for identifying, processing, and delivering Political Mail. Its 2026 Election Mail and Political Mail Guide instructs postal facilities to inform employees that they must promptly and efficiently process and deliver Political Mail. USPS also uses designated identifiers to identify Political Mail within the postal network.

f. USPS mail carriers are not authorized to withhold, discard, destroy, or otherwise prevent the delivery of mail because they disagree with its contents, including its political message. Mail entrusted to a letter carrier for delivery must be delivered or handled according to established USPS procedures.

---

[1] *See* USPS Postal Bulletin, "What is Political Mail?" https://about.usps.com/postal-bulletin/2026/pb22712/html/cover_004.htm (last visited October 29, 2026)
[2] *See* USPS Postal Bulletin, "What is Election Mail?" https://about.usps.com/postal-bulletin/2026/pb22712/html/cover_004.htm (last visited October 29, 2026)

g. USPS recognizes that some mail cannot be delivered to its intended recipient. This mail is commonly referred to as "Undeliverable as Addressed" ("UAA") mail. Reasons for nondelivery include an incomplete or incorrect address, an addressee who has moved or is unknown at the address, a refusal by the addressee, or other circumstances recognized under USPS mailing standards.

h. Mail that cannot be delivered as addressed must be handled according to USPS procedures. Depending on the circumstances, the mail may be forwarded to a new address, returned to the sender, or processed under other applicable procedures. Letter carriers are required to return undeliverable mail to the designated postal facility or handle it as instructed by USPS management.

i. Certain undeliverable mail may qualify for disposal under USPS procedures, including treatment as Undeliverable Bulk Business Mail (“UBBM”). The treatment and designation of UBBM requires a rigorous review of the reasons it cannot be delivered:

   i. First, mail must be examined for the reasons it cannot be delivered, such as incorrect, incomplete, or illegible addresses. Undeliverable mail is typically assigned an acronym to identify the reason, including Insufficient Address (IA), Attempted Not Known (ANK), No Such Number (NSN), No Such Street (NSS), Unable to Forward (UTF), and Vacant (VAC), etc. The fact that a piece of mail is advertising material or Political Mail does not, by itself, make it undeliverable or authorize a letter carrier to discard it.

   ii. Second, USPS employees are required to separate bulk business mail that meets UBBM criteria from First-Class Mail and other mail types. These other classes often require forwarding or returning to the sender, whereas UBBM does not.

   iii. Third, Designated clerks review accumulated bulk business mail to ensure that First-Class Mail and other accountable mail are not inadvertently included in material designated for disposal. Following this review, verified bulk business mail is processed for recycling or disposal in accordance with Postal Service procedures rather than being returned to the sender.

j. USPS employees are also required by 39 U.S.C. § 1011 to take an oath of office before beginning their duties. The oath includes a promise to support and defend the Constitution of the United States and to faithfully discharge the duties of their position.

## III. Report of dumping of political mail.

8. On October 19, 2026, USPS OIG received a report alleging the improper disposal—*i.e.*, dumping—of political mail at the Colonial Station Post Office (Colonial Post Office) in Sacramento, California. Colonial Post Office, located at 6024 44th Street in South Sacramento, serves the 95824 and 95820 zip code mail areas, which includes the

neighborhoods of Lemon Hill, Fruitridge Manor, Parkway, and Southeast Village. There are approximately 46 city mail carriers working there, including POLITE. POLITE delivers mail on City Route 011 (C011), which is one of the designated delivery routes within the 95820 service area. Within this service area, POLITE has 548 delivery points, meaning 548 different addresses that receive mail.

9. There is an election for Local Elected Position in California's November 3, 2026 general election. The election involves Candidate A and Candidate B.

10. The geographic boundaries of the district associated with the Local Elected Position overlap with ZIP codes and mail delivery routes serviced by the Colonial Post Office.

11. California's November 3, 2026, general election also includes several ballot propositions, which are proposed laws, constitutional amendments, or other measures submitted to voters for approval or rejection. Three of those propositions are Proposition A, Proposition B, and Proposition C.

### IV. Discovery of 493 Pieces of Political Mail in the Undeliverable Bulk Business Mail Cage

12. Colonial Post Office's Manager made the report to USPS OIG on October 19, 2026 (after initially reaching out on October 15, 2026 and some intervening emails and call-backs to get in touch with each other) after postal workers discovered approximately 493 pieces of Political Mail placed in the UBBM—Undeliverable Bulk Business Mail—cage on October 15, 2026. The presence in the UBBM meant that those pieces of Political Mail were deemed by the letter carrier that they could not be delivered, for instance, based on an incorrect or illegible address. The 493 Political Mail pieces appeared deliverable and were identified as originating from Route C011. The assigned mail carrier for Route C011 was POLITE.

13. After receiving the Colonial Post Office's Manager complaint, the USPS OIG opened an investigation based on the seriousness of the allegations and the substantial volume of mail involved. The nature of the reported mail, combined with the large number of potential delivery points, warranted a detailed inquiry to determine the facts, evaluate potential violations, and document the overall scope of the mailing activity.

14. During its investigation, the USPS OIG determined that the 493 pieces of political mail found in the UBBM were made up of six separate sets of Political Mail that had not been delivered on Route C011 between September 23, 2026 and October 9, 2026. USPS managers had documented and photographed the mail upon its initial arrival at the post office and maintained detailed records of the mailings in the Political Log located on the USPS network. The recovered mailpieces were compared to those records, enabling investigators to identify and account for the undelivered Political Mail associated with Route C011.

15. Descriptions of each of the six identified sets of Political Mail are provided below.

a. **Set One, 209 pieces, received on October 9, 2026**. The 209 mailpieces consisted entirely of "Vote No" political mail opposing Candidate A.

b. **Set Two, 8 pieces, received on October 9, 2026.** The 8 mailpieces consisted entirely of political mail in support of Candidate B.

c. **Set Three, 72 pieces, received on September 24, 2026.** The 72 mailpieces consisted entirely of political mail opposing Candidate A.

d. **Set Four, 73 pieces, received on October 5, 2026.** The 73 pieces consisted entirely of political mail opposing Candidate A.

e. **Set Five, 104 pieces, received on September 23, 2026.** The 104 pieces consisted entirely of political mail urging voters to "Vote NO" on Proposition A.

f. **Set Six, 27 pieces, received September 30, 2026.** The 27 pieces consisted entirely of political mail against Proposition A.

16. All six sets of Political Mail described above, 493 mailpieces in total, were placed in the UBBM as undeliverable mail. However, USPS management has reviewed the addresses listed on each mailpiece and determined that each address was verifiable, deliverable, and on POLITE's designated delivery route—C011 of the Colonial Post Office.

17. According to USPS Time and Attendance Records, POLITE worked his normal route (Route C011) at the Colonial Post Office when the six sets of mail were received. When mail is received at the Colonial Post Office, it is sorted and placed in each mail carrier's delivery case for that day or the next day. Therefore, the political mail described above would have been placed into POLITE's delivery case for delivery along his route.

18. The 493 mailpieces described above were received on September 23, 24, and 30, and October 5, and 9, 2026. POLITE worked his assigned route on September 23, 24, and 30, and October 5, 9, and 10, 2026. POLITE was off work from October 16 through October 18, 2026. A substantial volume of mail was recovered on October 15, 2026. Due to the quantity of mail involved, multiple carriers assigned to portions of POLITE's route on October 16 were unable to complete delivery of all mailpieces. As a result, some of the mail recovered on October 15, together with mail received on October 16 for POLITE's route, remained undelivered. This mail was assigned to POLITE's route and left for casing and delivery upon his return to duty on October 19, 2026.

19. USPS recovered all 493 pieces of mail placed in the UBBM and redelivered them on October 16, 2026, and October 19, 2026.

## V. Other Political Mail on Route C011 Was Delivered

20. While USPS OIG investigated the undelivered mail, Colonial Post Office's Manager reviewed other political mailpieces received at the Colonial Post Office and designated for delivery on route C011— POLITE's route. The Manager noted that on October 24, 2026, the Colonial Post Office received political mailpieces for Proposition B. The Proposition

B mailpieces were intended for delivery on route C011. The Proposition B mailpieces were not found in the UBBM, indicating they had been delivered.

## VI. October 27, 2026 discovery of 527 pieces of Political Mail, inside UBBM and inside POLITE's Postal Vehicle, some with addresses deliberately scratched out.

21. On October 27, 2026, Colonial Post Office management placed Political Mail into POLITE's case for delivery along route C011. Later that day, while POLITE was out on his route, management discovered that this group of mail had been placed in the UBBM with the addresses deliberately scratched out, with "Copy/Copies" written across the front with a black sharpie marker.

22. Also on October 27, 2026, after finding the scratched out and undelivered Political Mail in the UBBM, postal management selected six different addresses along route C011 to conduct a limited review to determine whether mail intended for those addresses had been delivered. Specifically, postal management wanted to determine if the political mail placed in POLITE's delivery case for that day had been delivered as it should have. None of the expected Political Mail was found in the six mailboxes.[3]

23. In addition, on October 27, 2026, after POLITE's shift ended for the day. Colonial Post Office management found pieces of Political Mail inside POLITE's assigned postal vehicle while it was parked at the Colonial Post Office. USPS procedures require carriers to return all undelivered mail to the post office and promptly report any mail that was not delivered during their route. Carriers are not authorized to leave mail in their vehicles at the end of their tours. None of the Political Mail recovered from his assigned vehicle on October 27, 2026 were reported by POLITE as undelivered.

24. In total, on October 27, 2026, Colonial Post Office management found 527 pieces of Political Mail that POLITE should have delivered but did not. The 527 pieces undelivered mail were discovered in two locations: the UBBM area and POLITE's postal vehicle.

25. The 527 mailpieces found on October 27, 2026 closely matched the 493 mailpieces recovered from the UBBM between September 23, 2026 and October 9, 2026. Both sets contained political mail against Candidate A and against Proposition A. Postal officials also encountered political mail endorsing Proposition C. Of the 527 mailpieces discovered on October 27, 2026, many had a line drawn through the addresses and contained handwritten scribbles bearing either "Vac" for vacant or "ATN" for Attempt Not Known.

   a. **Set One, 95 pieces, received October 26, 2026.** The 95 pieces consisted entirely of political mail urging voters to "Vote NO" on Proposition A.

   b. **Set Two, 72 pieces, received on October 26, 2026.** The 72 mailpieces consisted entirely of political mail opposing Candidate A.

---

[3] The six addresses selected are along Route C011 and referred to as "Property A through F." Postal officials observed that the mailbox for one address had a political mail flyer on an unrelated topic, but no other political mail in their mailbox. No mail referencing either Candidate A or Proposition A was observed.

c. **Set Three, 59 pieces, received on October 26, 2026**. The 59 mailpieces consisted entirely of political mail opposing Candidate A.

d. **Set Four, 27 pieces, received on October 26, 2026.** The 27 mailpieces consisted entirely of political mail opposing Candidate A.

e. **Set Five, 164 pieces, received on October 26, 2026.** The 164 mailpieces consisted entirely of political mail opposing Candidate A.

f. **Set Six, 26 pieces, received on October 27, 2026.** The 26 mailpieces consisted entirely of "Vote YES" on Proposition C.

g. **Set Seven, 84 pieces, received on October 22, 2026.** The 84 mailpieces consisted entirely of political mail supporting Candidate B.

26. USPS management reviewed each of the addresses listed on the 527 mailpieces and found them to be verifiable and deliverable addresses.

27. USPS took possession of all 527 pieces of mail recovered on October 27, 2026, for photographing, scanning, and processing. USPS delivered 517 of the 527 pieces of mail to their intended recipients by October 31, 2026. The ten pieces which were not able to be delivered were due to vacancy or lack of access. Those which could not be delivered due to lack of access will be attempted to be re-delivered on Monday, November 2, 2026.

## VII. POLITE's October 28, 2026 Interview with USPS OIG Special Agents

28. On October 28, 2026, USPS OIG special agents conducted a voluntary, non-custodial, recorded interview of POLITE. During this interview, POLITE stated in sum and substance that he routinely made his own decisions about whether to deliver political mail, relying on his personal views and beliefs rather than USPS delivery requirements. POLITE stated that some customers "refused political mail, had full mailboxes, or asked him not to deliver" political mail and advertisements. POLITE claimed that he "honored those requests" by returning the mail or, at times, placing it into the political UBBM.

29. POLITE further stated that once he or another mail carrier had delivered political mail conveying a particular message, he saw no reason to deliver additional mail expressing the same message because the recipients had already "got the message." POLITE also acknowledged that his personal opinions about the content of the mail influenced his delivery decisions. Specifically, he stated that he had researched Candidate A and believed that mail opposing Candidate A contained misleading propaganda. POLITE explained that he could not "honestly" perform his job by delivering what he considered misinformation because he believed doing so would mislead voters. POLITE similarly characterized repeated political mailings as "redundant," even when the materials differed in format, and therefore considered them unnecessary to deliver.

30. USPS placed POLITE on administrative leave on October 28, 2026 following the interview.

31. Based on the foregoing, I respectfully submit that there is probable cause to believe that from on a date unknown, but starting no later than on or about September 23, 2026, through October 27, 2026, in the Eastern District of California and elsewhere, ANTOINE RASHAD POLITE violated 18 U.S.C. § 1701 (Obstructing the Passage of Mail) and 18 U.S.C. § 1703(b) (Destruction or Delay of Mail). I therefore request that an arrest warrant and criminal complaint be issued for ANTOINE RASHAD POLITE.

/s/
Emily Horn, Special Agent
United States Postal Service, Office of Inspector General

SWORN before me telephonically pursuant to Fed. R. Crim. P. 4.1(d)(3) on November 1, 2026.

HONORABLE CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

Approved as to form:

_/s/ Kevin C. Khasigian__
KEVIN C. KHASIGIAN
Assistant U.S. Attorney

**United States v. ANTOINE RASHAD POLITE**
**Penalty Slip - Criminal Complaint**

**COUNT 1:**

VIOLATION: 18 U.S.C. § 1701 – Obstructing the Passage of Mail

PENALTIES: A maximum of up to six months in prison; or
Fine of up to $100,000; or both fine and imprisonment

SPECIAL ASSESSMENT: $10 (mandatory on each count)

**COUNT 2:**

VIOLATION: 18 U.S.C. § 1703(b) – Destruction or Delay of Mail

PENALTIES: A maximum of up to 1 year in prison; or
Fine of up to $100,000; or both fine and imprisonment
Supervised release up to 1 year

SPECIAL ASSESSMENT: $25 (mandatory on each count)